**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KENNETH DULWORTH,

      Petitioner - Appellant,

v.

EDWARD L. EVANS, Warden,

      Respondent - Appellee.

No. 05-6351

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**D.C. No. 05-CV-1106-F**

Kenneth Dulworth, pro se.

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

Kenneth Dulworth, a state inmate appearing pro se, seeks a certificate of

appealability (COA) so that he may appeal from the district court's dismissal of

his habeas petition filed pursuant to 28 U.S.C. § 2241.[*] The district court dismissed the petition sua sponte as time-barred without benefit of a response from the state.

Where the district court dismisses a petition on procedural grounds, a COA requires the inmate to demonstrate that it is reasonably debatable whether (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court's procedural ruling is correct. Slack v. McDaniel, 529 U.S. 473, 483-84; Miller-El v. Cockrell, 537 U.S. 322, 337 (2003). Because we conclude that the basis for the district court's procedural ruling is not correct, and a quick review of Mr. Dulworth's claims on the merits satisfies the first element, we grant a COA, reverse and remand. See York v. Galetka, 314 F.3d 522, 528 (10th Cir. 2003).

In 1993, while serving a term of incarceration for a crime unrelated to this appeal, Mr. Dulworth received escape misconduct "points" from the Howard McLeod Correctional Center.[1] He alleges that in 1996, these points were dropped

---

[*] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

[1] Apparently Mr. Dulworth was convicted of the crime of escape and sentenced to twenty years imprisonment. See Aplt. Br. at 2. And although it is not provided in the record, it also appears that he committed a violent felony while on escape.

by a classification committee, allowing him to be promoted to a class level three inmate.[2]  He further alleges that adjustment reviews from the Joseph Harp Correctional Center on November 22, 1999, and February 8, 2004, show that he had no active escape points.  See R. Doc. 1 at Exs. E, E1.

On July 28, 2004, Mr. Dulworth arrived at James Crabtree Correctional Center as a class level four inmate.  However, on July 30, 2004, he was informed that he was being demoted to a class level two inmate because of his active escape points.  Id. at Ex. F.  Mr. Dulworth promptly sought redetermination of his class level by lodging several appeals within the ODOC grievance process, the last of which was denied on October 12, 2004.

---

[2] In Oklahoma, with a few exceptions, inmates can earn credits towards reducing their term of imprisonment.  See Okla. Stat. Ann. tit. 57, § 138.  Each earned credit is equivalent to one day of incarceration.  Id.  The amount of earned credits that an inmate may receive is determined by his or her placement in one of four security class levels.  Id.  The higher the class level, the more earned credits an inmate can accrue.  Id.  The concept of escape "points" comes from the Oklahoma Department of Corrections (ODOC) policy regarding security assessments, where points are assigned for various items so that a decision can be made as to whether an inmate should be assigned to minimum, medium, or maximum security.  One of the items for which points are assessed is "[e]scapes from any level of security that results in an injury to another or a felony conviction for a violent crime while on escape status . . ."  OP-060103(M)(II)(B)(3)(a)(4); <http://www.doc.state.ok.us/Offtech/op060103(m).htm> (accessed March 1, 2006).  ODOC policy provides that inmates with active escape points cannot advance to class levels three or four.  OP-060107(I)(C)(2)(c), (d); <http://www.doc.state.ok.us/Offtech/op060107.htm> (accessed March 1, 2006).

Mr. Dulworth filed his § 2241 petition on September 20, 2005. In it, he contended that his demotion to a class level two inmate was due to a new ODOC policy enacted in 2003, which provides that the commission of a violent felony while on escape status results in an inmate's escape points remaining active for the duration of his incarceration. Consequently, the new policy prohibits Mr. Dulworth from being promoted to class levels three and four, thereby lengthening his incarceration. See OP-060107(I)(C)(2)(c), (d) (providing that inmates with active escape points cannot advance to class levels three or four). He claims that in 1993—the year of his escape—an inmate escaping from a minimum security prison only carried active points for five years and an inmate committing a violent felony while on escape status only carried active points for two years. As such, he argues that the new ODOC policy's application to his 1993 escape amounts to an ex post facto violation infringing on his fundamental rights to due process and equal protection.

The magistrate judge recommended that Mr. Dulworth's petition be dismissed as time barred pursuant to the one-year limitation period in 28 U.S.C. § 2244(d)(1)(D). R. Doc. 6 at 7. He determined that Mr. Dulworth would not be prejudiced by sua sponte consideration of the time-bar because Mr. Dulworth could object to the recommendation. Id. at 4. Under 28 U.S.C. § 2244(d)(1)(D), the one year limitation begins to run when the factual predicate of a petitioner's

claim or claims could have been discovered through due diligence. Burger v. Scott, 317 F.3d 1133, 1138 (10th Cir. 2003). The magistrate judge determined this date to be July 30, 2004—the day Mr. Dulworth was told he was being demoted to a class level two inmate because of his active escape points—not October 12, 2004—the day his final appeal within the ODOC grievance process was denied. As such, the magistrate judge concluded that the statute of limitations expired on July 30, 2005, well before Mr. Dulworth filed his habeas petition on September 20, 2005. The magistrate judge determined that the time Mr. Dulworth spent exhausting his administrative remedies did not affect the question of when Mr. Dulworth was aware of the factual predicate of his claims.

The magistrate judge recognized that the limitations period is tolled under 28 U.S.C. § 2244(d)(2) for the time during which a properly filed application for state post-conviction or other collateral review is pending. He concluded, however, that "because [Mr. Dulworth] has apparently pursued no state remedies, statutory tolling is not available here." R. Doc. 6 at 6. The magistrate judge also rejected equitable tolling because Mr. Dulworth did not plead extraordinary circumstances justifying tolling. See Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). According to the magistrate judge, Mr. Dulworth was not diligent given the fourteen month delay between finding out he was demoted to class level two and the filing of this action.

Mr. Dulworth objected to the report and recommendation arguing that his petition was timely. R. Doc. 7 at 4. He argued with citation to authority that he was required to exhaust his administrative remedies, and the one-year limitation period should run from October 12, 2004, the date when he learned of the outcome of his last administrative appeal. The district court did not address his argument. This petition for a COA followed.

As a preliminary matter, we note that it is an issue of first impression in this circuit whether 28 U.S.C. § 2244(d)(1)'s one-year limitation period applies to § 2241 habeas petitions contesting administrative decisions. The Ninth, Second, Fourth, and Fifth Circuits have each held that the limitation period applies to § 2254 petitions challenging administrative decisions. See Shelby v. Bartlett, 391 F.3d 1061, 1064-65 (9th Cir. 2004); Cook v. New York State Div. of Parole, 321 F.3d 274, 279-80 (2nd Cir. 2003); Wade v. Robinson, 327 F.3d 328, 330-31 (4th Cir. 2003); Kimbrell v. Cockrell, 311 F.3d 361, 363 (5th Cir. 2002). Only one circuit, the Seventh, has held to the contrary. See Cox. v. McBride, 279 F.3d 492, 493-94 (7th Cir.2002) (holding that the limitation period applies to petitions contesting the judgment of a state court, but not to petitions contesting administrative decisions). While the foregoing cases address the applicability of § 2244(d)(1)'s one-year limitation period on petitions brought pursuant to § 2254, we note that in this circuit, Mr. Dulworth properly sought habeas relief under §

2241, rather than § 2254, because he was challenging the execution of his sentence rather than the validity of his conviction. See Hamm v. Saffle, 300 F.3d 1213, 1216 (10th Cir. 2002); McIntosh v. United States Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997) ("Petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence." (citations omitted)). Nonetheless, because we agree that § 2244(d)(1)'s one-year limitation period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court," 28 U.S.C. § 2244(d)(1), we now join the Second, Fourth, Fifth and Ninth Circuits and hold that even if the petition challenges a pertinent administrative decision rather than a state court judgment, the limitation period applies.

We are now called upon to address the effect of a petitioner's diligent exhaustion of administrative remedies on the commencement of the limitations period under § 2241(d)(1)(D). Specifically, we are faced with the question of whether the factual predicate of a petitioner's claim or claims could have been discovered through due diligence before his final administrative appeal becomes final. See id. We answer no.

In similar contexts courts have recognized that timely and diligent exhaustion of *administrative* remedies does not work to a petitioner's

disadvantage in determining when the one-year limitation period commences under § 2244(d)(1)(D). Rather, they have determined that the date on which the factual predicate of a petitioner's claim could have been discovered through the exercise of due diligence—thus commencing the limitation period—is the date that the denial of his administrative appeal becomes final. See Shelby, 391 F.3d at 1066 (finding that the date petitioner could have discovered the factual predicate of his federal habeas claim through the exercise of due diligence was not the date the department of corrections decided to remove petitioner's statutory good time credits, but rather it was the date when he learned of the denial of his administrative appeal of that decision); see also Redd v. McGrath, 343 F.3d 1077, 1082 (9th Cir. 2003) (holding that the date on which the factual predicate of petitioner's claim could have been discovered through the exercise of due diligence was the date that his parole revocation became final); Wade, 327 F.3d at 333 (same); Cook, 321 F.3d at 280 (same). We find this authority persuasive. Thus, we conclude that where, as here, a petitioner timely and diligently exhausts his administrative remedies, § 2244(d)(1)(D)'s one-year limitation period does not commence until the decision rejecting his administrative appeal becomes final.[3]

---

[3] We acknowledge that the Fifth Circuit follows a different avenue to achieve a functionally similar result. See Cockrell, 311 F.3d at 364. In Cockrell, the court noted, in dicta, that the timely pendency of prison grievance procedures (i.e., administrative appeals) would toll § 2244(d)(1)'s one-year limitation period. See id. We find the issue presented here to be more properly framed in terms of

Our decision here is buttressed by consideration of the general requirement that a petitioner under § 2241 must exhaust available state remedies. Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000). This requirement extends to the exhaustion of *administrative* remedies as well. See, e.g., Wilson v. Jones, 430 F.3d 1113, 1118 (10th Cir. 2005); Moore v. Olson, 368 F.3d 757, 758 (7th Cir. 2004); Clonce v. Presley, 640 F.2d 271, 273-74 (10th Cir. 1981) (stating that a prisoner must "exhaust the respective state and administrative remedies before challenging his state or federal custody by habeas corpus"). As such, if § 2244(d)(1)(D) was construed to commence from the date when petitioner first learns of the initial decision giving rise to his § 2241 claim, the limitations period would run while he attempted to exhaust his administrative remedies, i.e., while he appealed the initial decision. Cf. Burger, 317 F.3d at 1138 (holding that *judicial* exhaustion does not delay commencement of the limitation period under § 2244(d)(1)(D), noting that time a petitioner spends exhausting judicial remedies is properly addressed by the statutory tolling mechanism provided in § 2244(d)(2)). Such a construction would lead to a perverse result indeed, effectively shielding from federal habeas review those administrative appeals

whether the factual predicate of Mr. Dulworth's claim could have been discovered before his administrative appeal became final.

that—for whatever reason—do not become final within the one-year limitations period. This cannot be so.

We note in passing that the magistrate judge relied upon an unpublished case, Smith v. Grubbs, 42 Fed. Appx. 370 (10th Cir. 2002), wherein we held a petitioner was time-barred, rejecting his contention that the one-year limitation period should run from each successive denial of parole, even though the petitioner was aware of the factual predicate of his claim at the first denial of parole. Notwithstanding our general disfavor of citation to unpublished opinions of this court, see 10th Cir. R. 36.3, Smith is plainly distinguishable—it did not address whether petitioner's exhaustion of his administrative remedies affected the commencement of the limitations period under § 2241(d)(1)(D).

On remand, the state should be served and permitted to answer and raise any defenses.

REVERSED and REMANDED.